UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HABIB SADID, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>IDAHO STATE UNIVERSITY, ARTHUR VAILAS, RICHARD JACOBSEN, and JOHN/JANE DOES I through X, whose true identities are presently unknown,<br><br>    Defendants. | Case No. 4:11-CV-103-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion to Dismiss (Dkt. 8) and Plaintiff's Motion to Strike (Dkt. 11). For the reasons explained below, the Court will grant Defendants' motion in part and deny it in part, and deny Plaintiff's motion to strike.[1]

## FACTUAL BACKGROUND

Plaintiff, Habib Sadid, a tenured associate professor in Idaho State University's ("ISU") Civil Engineering Department, was terminated by ISU through its president, Defendant Arthur Vailas, based upon a recommendation by Defendant Richard Jacobsen, Dean of the ISU's College of Engineering. *Compl*. at ¶¶ 60, 77, Dkt. 1.

---

[1] Plaintiff moved to strike Defendants' Reply for exceeding the ten-page limit. Dkt. 11. The Court subsequently granted Defendants' Motion (Dkt. 12) to Exceed the page limit. Dkt. 17. For that reason, and because the Court did not consider the excess pages in its decision here, Plaintiff's motion to strike will be denied as moot.

**MEMORANDUM DECISION AND ORDER - 1**

Mr. Sadid has alleged that a number of events and circumstances culminated in his termination. First, Mr. Sadid publicly criticized ISU on various matters which he alleges are of public concern. *Id.* at ¶¶ 15, 17, 19, 24-25, 32, 37. In September 2008, Mr. Sadid initiated a state court action against ISU for declining to appoint him as Civil Engineering Department Chair, despite a faculty vote in his favor. *Id.* at ¶¶ 21-23, 30. Mr. Sadid engaged Defendant Jacobsen in a "private discussion at a public venue" on April 9, 2009, *Id.* at Intro. ¶, for which he was issued a letter of reprimand by Defendant Jacobsen. *Id.* at ¶ 40. At a College of Education faculty meeting on April 21, 2009, Mr. Sadid "engaged in the discussions during the meeting where he felt he had input" and allegedly "was very direct, very professional and not intimidated by others during this discourse." *Id.* at 47. As a result of his behavior in this meeting, Defendant Jacobsen issued a Notice of Contemplated Action to Mr. Sadid, stating his intent to recommend terminating Mr. Sadid because of his "continued pattern of behavior" at ISU. *Id.* at 50-51. Finally, Mr. Sadid "received a letter of reprimand in regard to purchases made," from ISU Provost, Gary Olson, dated July 2, 2009. *Id.* at ¶ 53.

On July 17, 2009, Mr. Sadid and his counsel met with Defendant Jacobsen and ISU's counsel, allowing Mr. Sadid "to present [mitigating] evidence or information" on his "pattern of behavior." *Id.* at ¶¶ 52, 56. Allegedly, the focus of this meeting was Mr. Sadid's behavior at the April 21 College of Engineering meeting. *Id.* at ¶ 58. On August 3, 2009, Defendant Jacobsen recommended terminating Mr. Sadid for his behavior on April 9 and 21; "unprofessional behavior in past academic years" that adversely affected

**MEMORANDUM DECISION AND ORDER - 2**

ISU, its fundraising efforts and "staff and administrator [*sic*] that had left ISU"; "[c]reating a hostile work environment . . . which caused some faculty to leave and others to consider leaving ISU," "[n]on-conformance with purchasing policies"; and "[c]onsistent disruptive behavior." *Id.* at ¶ 61. Mr. Sadid alleges that the only ground for termination he was aware of was for his behavior on April 9 and 21, *id.* at ¶ 60, though it is clear he was also aware of the purchasing issues prior to the July 17 conference. *Id.* at ¶ 53. The next day, Defendant Vailas notified Mr. Sadid that he was being recommended for termination. *Id.* at 62.

Mr. Sadid submitted a Notice of Grievance on August 18, 2009. *Id.* at ¶ 63. ISU held a grievance hearing for Mr. Sadid, and he alleges that "during the hearing process, ISU raised issues in support of [his] termination that were never a part of the [Notice of Contemplated Action] issued to [him] and of which [he] never received notice." *Id.* at 65-66. Based on the hearing, ISU's Faculty Appeals Board found "insufficient evidence" warranting termination. *Id.* at 67. The 4 to 1 majority was particularly concerned by what it termed a "lack of due process." *Id.* at 68. ISU's Faculty Senate – though not related or privy to the hearing – also called for Professor Sadid's reinstatement. *Id.* at ¶71-72. Defendant Vailas nevertheless terminated Mr. Sadid effective October 30, 2009. *Id.* at ¶ 77. "One of the principle [*sic*] reasons" for terminating Mr. Sadid "was that [he] posed a safety threat to the health and welfare of the students and faculty of ISU and the security of ISU." *Id.* at 75.

Mr. Sadid's alleged danger to the ISU community was leaked to the ISU campus at large allegedly through the lone Faculty Appeals Board dissenter's minority report, which landed in the press "through an anonymous source." *Id.* at 82-84. And despite Mr. Sadid's "demand[ ] that ISU and its employees cease and desist in their efforts to further tarnish [his] reputation," *id.* at 85, an ISU employee's comments were published in a student newspaper stating generally that Mr. Sadid "presented 'a lot of safety issues.'" *Id.* at 86, *see also id.* at Exhibit D.

Mr. Sadid initiated this action on March 15, 2011 against ISU and Defendants Vailas and Jacobsen in both their official and individual capacities. Dkt. 1. He alleged a violation of 42 U.S.C. § 1983 for denial of his First Amendment, Substantive and Procedural Due Process and Equal Protection rights and the following state law claims: Breach of Contract, Defamation and Intentional Infliction of Emotional Distress. *Id.* Defendants' moved to dismiss under Rule 12(b)(6), asserting an 11th Amendment immunity defense and that Mr. Sadid failed to meet Rule 8(a)'s pleading requirements. Dkt. 8. Because Defendants' Reply brief (Dkt. 10-1) exceeded the ten-page limit by three pages, Mr. Sadid moved to strike the Reply in its entirety. Dkt. 11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint

attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**MEMORANDUM DECISION AND ORDER - 5**

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*).[2] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

---

[2] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*. *See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

**MEMORANDUM DECISION AND ORDER - 6**

## ANALYSIS

1.  **ISU's Eleventh Amendment Immunity**

"Although today's cases concern suits brought by citizens against their own States, this Court has long understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition which it confirms." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000) (internal quotations and citations omitted). "The Eleventh Amendment bars suits [in federal court] against the State or its agencies for all types of relief, absent unequivocal consent by the state," *Krainski v. Nevada*, 616 F.3d 963, 967 (9th Cir. 2010), or congressional authorization. *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999) (This is done under Congress' "power to enforce the Fourteenth Amendment [which was] specifically designed to alter the federal-state balance.").

    A.  **ISU Is An Arm of the State of Idaho**

This Court has already held that ISU is an arm of the State of Idaho. *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 647 F. Supp. 190, 193 (D. Idaho 1985). ISU was "immune from suit for money damages" in that "particular factual setting." *Id.* Twenty-six years later, Mr. Sadid alleges that the "factual setting" has sufficiently changed so as to warrant reconsideration of this decision. The only alleged difference is that, where ISU received 57 percent of its budget from state funds in 1985, it receives 39 percent today. *Def.'s Resp.* at 8-9, Dkt. 9-1.

The Ninth Circuit considers the following "*Mitchell*"[3] factors in deciding "whether an entity is an arm of the state" and thus protected from suit in federal court by the 11th Amendment:

> (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity.

*Beenjtes v. Placer Cy. Air Pollution Control Dist.*, 397 F.3d 775, 778 (9th Cir. 2005) (quoting *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250-51 (9th Cir. 1992)). The Court in *Beenjtes* gave "additional weight" to the first factor "because 'the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of a state's treasury.'" *Id.* (quoting *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1041 (9th Cir. 2003)). In considering this factor, the court noted that "[t]he authority to raise independent revenue is a relevant consideration because 'the fact that the state has given the entity the authority to generate revenue provides compelling evidence that the state has created an autonomous entity rather than an alter ego or instrumentality that operates at the state's behest and relies exclusively on state appropriations.'" *Beentjes*, 397 F.3d at 780 (quoting Alex E. Rogers, Note, *Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh Amendment Arm-of-the-State Doctrine*, 92 Colum. L. Rev. 1243, 1308 (1992)).

---

[3] These factors were first addressed by the Ninth Circuit in *Mitchell v. Los Angeles Comm. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988).

Two years after *Beenjtes*, the Ninth Circuit considered *only* the first *Mitchell* factor in *Stoner v. Santa Clara Cy. Office of Educ.*, 502 F.3d 1116 (9th Cir. 2007). In *Stoner*, the court concluded that a school district and high school were arms of the state of California, noting the "well-established Eleventh Amendment principle that a governmental entity may be an arm of the state protected by sovereign immunity where the state is functionally liable, even if not legally liable, on money judgments against the state entity." *Stoner*, 502 F.3d at 1122-23;[4] *see also Roberts v. College of the Desert*, 870 F.2d 1411, 1415 (9th Cir. 1988) (noting that state liability for money damages is the "central factor" in the 11th Amendment inquiry). Further, *Stoner* rejected the argument that *Regents of the University of California v. Doe*, 519 U.S. 425 (1997), required state legal liability and precluded functional liability when extending Eleventh Amendment immunity. 502 F.3d at 1122-23. Rather, "*Regents* holds that the Eleventh Amendment may bar a lawsuit against a state agency in circumstances where the state is legally liable for a judgment against that agency, even if the state is indemnified against that liability by a third party." *Id.* at 1122. Combining *Stoner* and *Regents* then, either functional liability or ultimate legal liability of the state suffices in granting Eleventh Amendment immunity to a state agency.

But applying both *Beenjtes* and the *Stoner-Regents* rule to ISU produces mixed results. It is undisputed that ISU generates much of its budget from non-state sources. *See*

---

[4] Though *Stoner* was a suit brought under 31 U.S.C. § 3729(a), it hinged on whether the state agencies being sued were a "person" under § 3279. 502 F.3d at 1121. Because "Eleventh Amendment case law should guide [the] determination of whether an entity is a state agency and thus not a 'person' for purposes of § 3729," *id.*, its analysis is still pertinent here.

**MEMORANDUM DECISION AND ORDER - 9**

Idaho State University, *Presentation to: The Joint Finance-Appropriations Committee* (January 25, 2011), slide 10, *available at* http://www.legislature.idaho.gov/budget/JFAC/presentations/ISU.2011-01-25.1.pdf. On the other hand, the state is functionally and legally liable for ISU's debts. First, "revenue lost to a judgment must be supplanted by the interchangeable state funds already in the . . . budget." *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, (9th Cir. 2003) (quoting *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1142 (9th Cir. 2002)). "This effectively draws state funds away from other programs . . . to pay the judgment." *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 252 (9th Cir. 1992). The state treasurer is also treasurer to ISU's board of trustees, I.C. § 33-3004, further evidencing the state's liability. Second, in a state court action, if ISU's "board has no money out of which to pay any judgment obtained against it, the judgment creditor must bring his action in [Idaho Supreme Court] based upon such judgment, and ask for a recommendatory judgment to the Legislature." *Moscow Hardware Co. v. Regents of Univ. of Idaho*, 113 P. 731 (Idaho 1911).[5] Finally, ISU is more like the *Stoner* and *Regents* entities than the *Beenjtes* entity because its largest source of funds is still the state. *Presentation to: The Joint Finance-Appropriations Committee*, slide 10.

Moving to the second *Mitchell* factor, ISU serves the central government because it establishes and maintains "the intelligence of the people," crucial to "[t]he stability of a

---

[5] The University of Idaho's Board of Regents and ISU's Board of Trustees are the same: the Idaho State Board of Education, and the Idaho State Board of Education has the same general responsibilities over both institutions. I.C. §§ 33-2802, 33-3003. Accordingly, *Moscow Hardware* also establishes the State of Idaho's legal liability for ISU's debts.

**MEMORANDUM DECISION AND ORDER - 10**

republican form of government." Idaho Const. Art. IX, § 1. *See also Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999).

Third, ISU is "a body politic and corporate, with its own seal and having power to sue and be sued in its own name." I.C. § 33-3003. However, the United States Supreme Court's decision in *College Savings Bank* calls into question the prudence of giving any serious weight to this factor. Although discussing waiver of Eleventh Amendment immunity, it noted that an otherwise immune state agency does not "consent to suit in federal court merely by stating its intention to 'sue and be sued.'" *College Savings Bank*, 527 U.S. at 669.

Fourth, although ISU has been given the power "[t]o acquire by purchase, gift or the exercise of the right of eminent domain and hold and dispose of real or personal property or rights or interests therein," I.C. § 33-3804, "[a]ll rights and title to property, real or personal, belonging to or vested in the Idaho State University are . . . vested in its board of trustees and their successors." I.C. § 33-3005.

Finally, ISU's corporate status is that of "a body politic and corporate and a separate and independent legal entity." I.C. § 33-3803. However, in the same breath the State "further confirm[s] [ISU] as a governmental instrumentality for the dissemination of knowledge and learning." *Id.*

Although ISU is an entity that experiences a certain amount of autonomy deriving from its ability to generate non-state revenues and its designation as an "independent legal entity," the balance of the *Mitchell* factors demonstrate that it is an arm of the State

**MEMORANDUM DECISION AND ORDER - 11**

of Idaho. As in *Ferguson*, this Court finds that ISU is immune from suit in federal court, particularly because of the "'impact' on the State treasury" a judgment against it would have. *Ferguson*, 647 F. Supp. at 192.

### B. ISU Has Not Waived Its Immunity

A state consents to a suit, or waives its Eleventh Amendment immunity, by (1) "voluntarily invok[ing] our jurisdiction" or (2) "mak[ing] a clear declaration that it intends to submit itself to our jurisdiction." *College Savings Bank*, 527 U.S. at 676 (internal quotations and citations omitted).

First, "[a] state waives its Eleventh Amendment immunity if it 'unequivocally evidence[s its] intention to subject itself to the jurisdiction of the federal court.'" *Johnson v. Rancho Santiago Commty. College Dist.*, 623 F.3d 1011, 1021 (9th Cir. 2010) (quoting *Hill v. Blind Indus. & Svcs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999)). Waiver occurred in *Hill* "when the state did not raise the defense until the opening day of trial, after it had filed two motions to dismiss and an answer that did not assert the defense, consented to have a magistrate judge try the case, conducted discovery, moved to compel discovery and for sanctions, participated in a pre-trial conference, and filed trial materials." *Johnson*, 632 F.3d at 1021-1022 (discussing *Hill*, 179 F.3d at 758); *see also In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002) (the state waived sovereign immunity when it filed a limited response, an answer, and a motion for summary judgment; attended an oral hearing and argued the merits; and heard the court announce its preliminary leanings, all without raising the sovereign immunity defense). The defendant

**MEMORANDUM DECISION AND ORDER - 12**

in *Johnson* similarly waived its Eleventh Amendment immunity by "litigat[ing] the suit on its merits, participat[ing] in discovery, and fil[ing] a motion to dismiss and a summary judgment motion without pressing a sovereign immunity defense," even though it "baldly asserted" the defense in its answer. *Johnson*, 632 F.3d at 1022.

ISU has only submitted this motion and disputed Mr. Sadid's motion to strike its reply. Such is insufficient to constitute a waiver of Eleventh Amendment immunity.

Second, as discussed above, "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *College Savings Bank*, 527 U.S. at 676 (internal citations omitted). "Nor does it consent to suit in federal court merely by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction.'" *Id.* (internal quotations and citations omitted). Accordingly, ISU's statutory authorization to "sue and be sued," I.C. § 33-3003, is insufficient to constitute a conscious waiver.

### C. Federal Law Has Not Abrogated ISU's Immunity

Finally, ISU's Eleventh Amendment immunity has not been abrogated by congressional authorization. "We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 67 (1989).

## 2. Defendants Vailas and Jacobsen

### A. Official Capacity

Mr. Sadid has brought suit against Defendants Vailas and Jacobsen in their official capacities in all counts of his lawsuit. "[S]uits against state officials in their official capacity are no different from suits against the state itself." *Krainski v. Nevada*, 616 F.3d 963, 968 (9th Cir. 2010) (citing *Will*, 491 U.S. at 71 (1989)). There is, however, "[a] narrow exception . . . 'where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's *federal* constitutional or statutory rights.'" *Id.* at 967-968 (quoting *Central Reserve Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988)) (emphasis in original). Under this exception – termed the *Ex Parte Young* doctrine[6] – "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n. 10 (internal quotations omitted).

"In determining whether *Ex Parte Young* is applicable . . . the relevant inquiry is only whether [Plaintiff] has alleged an ongoing violation of federal law and seeks prospective relief." *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007). The "court need only conduct a straightforward inquiry." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations omitted).

Mr. Sadid is seeking monetary damages, reinstatement, attorney fees and costs and removal of negative statements in his personnel file. *Compl.* at 36, Dkt. 1. But he has not alleged an ongoing violation of federal law, and these remedies are all retrospective.

---

[6] The United States Supreme Court first conducted the analysis in *Ex Parte Young*, 209 U.S. 123 (1908).

**MEMORANDUM DECISION AND ORDER - 14**

Accordingly, Defendants Vailas and Jacobsen are immune from suit in their official capacities under the Eleventh Amendment.

### B. Individual Capacity

Mr. Sadid has also sued Defendants Vailas and Jacobsen in their individual capacities. Although Defendants seek dismissal of Mr. Sadid's Complaint in its entirety, the only asserted basis for dismissal is Eleventh Amendment immunity. However, Eleventh Amendment immunity does not apply to claims brought against defendants in their individual capacities. Accordingly, the motion to dismiss Mr. Sadid's claims against Defendants Vailas and Jacobsen in their individual capacities will be denied.

## CONCLUSION

The claims against ISU and against Defendants Vailas and Jacobsen in their official capacities cannot be cured and are therefore dismissed with prejudice. All other counts against Defendants Vailas and Jacobsen in their individual capacities remain.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 8) is **GRANTED IN PART AND DENIED IN PART**. All counts against ISU and against Defendants Vailas and Jacobsen in their official capacities are dismissed. All charges against Defendants Vailas and Jacobsen in their individual capacities remain.

2. Plaintiff's Motion to Strike (Dkt. 11) is **DENIED** as moot.



DATED: August 10, 2011

_____
B. Lynn Winmill
Chief Judge
United States District Court