UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HABIB SADID, an individual,<br><br>     Plaintiff,<br> v.<br><br>IDAHO STATE UNIVERSITY, ARTHUR VAILAS, RICHARD JACOBSEN, GRAHAM GARNER, DAVID BEARD, and JOHN/JANE DOES 1 through X, whose true identities are presently unknown,<br><br>     Defendants. | Case No. 4:11-cv-00103-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE STAFF MEMBERS** |

### INTRODUCTION

Pending before the Court are two motions in limine related to current and former ISU staff members.  *See* Dkts. 145, 155.  The Court has determined oral argument would not significantly assist the decisional process and will decide these motions without a hearing.

### BACKGROUND

After the summary judgment rulings in this case, plaintiff Dr. Habib Sadid has one remaining claim against one defendant – defamation against Graham Garner.  After ISU terminated Dr. Sadid, Mr. Garner told a reporter at the ISU student newspaper that, among other things, Dr. Sadid "presented a lot of safety issues." *ISU Bengal Article,* Dkt. 88-15, at 2.  Dr. Sadid's defamation suit is based on these comments.  One of Mr.

MEMORANDUM DECISION AND ORDER - 1

Garner's affirmative defenses is that he is immune from suit under Idaho's Tort Claims Act.  *See* Idaho Code § 6-904(3).  Specifically, if Mr. Garner made these comments within the course and scope of his employment at ISU, and without malice or criminal intent, then he is immune from suit.  *See id.*

## ANALYSIS

I.   **Defendant's Motion to Exclude Testimony from Annie Havlicak Averitt, Ronda Mahl, and Priscilla Goldbeck (Dkt. 145)**

Mr. Garner seeks to exclude testimony from three current and former ISU staff members – Annie Havlicak Averitt, Ronda Mahl, and Priscilla Goldbeck.  Mr. Garner says there are a variety of reasons why Dr. Sadid should not be allowed to call them as trial witnesses.  Most globally, he says their testimony is "simply irrelevant to the issues and should be excluded to avoid waste of time, burden to these witnesses, and confusion of the issues."  *Mot. Mem.*, Dkt. 145-1, at 2.  Mr. Garner also says that he is sure to win on his statutory-immunity affirmative defense and "[f]or this reason alone Sadid should not be allowed to compel the staff members to sit through trial."  *Id.*  He further contends that nobody is disputing these women's "documented fear of Sadid as such facts are already established of record and uncontroverted."  *Id.* at 2-3.  Thus, he says, they should not be forced to endure testifying at trial.  Garner also suggests that the Court should protect these women from "oppression" and from being "bullied and harassed" by Dr. Sadid by judicially noticing their deposition testimony and their grievance-hearing testimony.  *Reply*, Dkt. 158, at 3.  More specifically, Mr. Garner says Ms. Goldbeck suffers from post-traumatic stress syndrome, apparently because Dr. Sadid interrupted

"the direct examination of a couple of these staff members during the grievance proceedings with a verbal outburst toward them." *Id.* Finally, Mr. Garner says that their testimony would be cumulative.[1]

The Court is not persuaded by any of these arguments. The truth or falsity of Mr. Garner's statements will be an issue during trial. Among other things, Mr. Garner allegedly said Dr. Sadid "'presented a lot of safety issues. There were many individuals who filed reports where they claimed Dr. Sadid threatened them.'" *ISU Bengal Article,* Dkt. 88-15  The reporter also indicated that "Garner . . . said that several of these people who had filed reports went before administrative committees, detailing the threats." *Id.*

Apparently, when he made his comments, Mr. Garner was relying, in part, on accounts of Averitt's, Goldbeck's and Mahl's interactions with Dr. Sadid or their observations of Dr. Sadid. There is an issue as to whether Mr. Garner exaggerated the danger posed by Dr. Sadid's conduct when he spoke to the reporter. The Court explained this point in its summary-judgment ruling as follows:

> The key problem with Garner's statements is that if they are read favorably to the plaintiff, they imply that Dr. Sadid *directly* threatened people and that these direct threats are what triggered his termination. But there is no evidence that Dr. Sadid was fired based on his direct threats to anyone. To be sure, there is evidence that his firing was partly based on the fact that some women *felt threatened* by observing Dr. Sadid's interactions with others, as well as his demeanor. For example,

---

[1] On reply, for the first time, Mr. Garner said that Dr. Sadid failed to disclose these witnesses in pretrial discovery responses. The Court will not address this argument, as it was raised for the first time on reply. However, consistent with the Court's other decisions in this case, the Court may well preclude the witnesses from testifying if they were not fairly disclosed as required by the Federal Rules of Civil Procedure. The Court is tempted to resolve that issue now, but cannot do so because Dr. Sadid has not had an opportunity to respond to Mr. Garner's contention.

> as detailed above, one female staff member said she experienced "severe anxiety and fear of imminent violence" after witnessing Dr. Sadid yelling at Dean Jacobsen during an argument. *See* Dkt. 88-13, ¶ 1, at 2; Dkt. 92, Ex. I at 17.
>
> But it is arguably an untruthful overstatement to say that "many individuals" filed reports claiming Dr. Sadid threatened them, and that *these* threats are what triggered Dr. Sadid's firing. In other words, saying or implying that someone *directly threatened* other people is different from saying that a person generally feels threatened by another's behavior. Consequently, the jury will have to determine whether Garner's statements are "substantially accurate."

*May 12, 2013 Decision,* Dkt. 135, at 11-12.  Dr. Sadid is entitled to put on evidence related to these women's interactions with him, including, for example, whether they reported that he had threatened them.

## II.   Plaintiff's Motion to Designate Certain Witnesses as Hostile (Dkt. 155)

Dr. Sadid requests an order designating various witnesses as hostile under Federal Rule of Evidence 611(c), including the following – all of whom where former defendants in this action:

(1)   Arthur Vailas – ISU president;

(2)   Richard Jacobsen – Dean of ISU's College of Engineering; and

(3)   David Beard – ISU Professor.

In addition to these former defendants, Dr. Sadid says the following persons should be designated as hostile witnesses:

(1)   Stephen Chatterton – 22-year ISU employee, Director of Public Safety;

(2)   David Miller – former ISU employee, served as the Director of Human Resources for approximately 13 years;

 (3) Priscilla Goldbeck – seven-year ISU employee, administrative assistant in the College of Science and Engineering;

 (4) Annie Havlicak Averitt, ISU student (2006-09); former ISU employee (2008-2011); and

 (5) Ronda Mahl – 25-year ISU employee, administrative assistant in the College of Science and Engineering.

Federal Rule of Evidence 611 relates to the "Mode and Order of Examining Witnesses and Presenting Evidence." Fed. R. Evid. 611. Sub-section (c) provides that leading questions are generally not permitted on direct, but that "[o]rdinarily, the Court should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c).

At this point, the Court is willing to grant the motions as to all the above-listed witnesses except Mr. Chatterton and Mr. Miller. The Court will reserve judgment as to these individuals. In particular, the Court will need to observe their demeanor at trial. As for the other witnesses, the factual situation underlying this litigation convinces the Court that they may be classified as hostile witnesses in advance of trial. *See generally Matos v. Ashford Presbyterian Comm. Hosp., Inc.*, 4 F.3d 47, 50 (1st Cir. 1993) (observing that some witness may be "affirmatively viewable as hostile because of the situation, *viz.*, classifiable in advance as hostile, . . . ."). Mr. Vailas, Mr. Jacobsen and Mr. Beard are all former defendants in this action and Dr. Sadid indicates that they are current defendants in related state-court litigation. As for Ms. Goldbeck, Ms. Averitt, and Ms. Mahl, it seems clear that these women are extremely reluctant to testify at trial. As noted above,

Mr. Garner has asked the Court to protect them from "oppression" by being called to testify. Thus, they rather easily fit into the category of "unwilling" witnesses. *See* Fed. R. Evid. 611 (1972 advisory committee notes to subdivision (c), observing that the suggestive powers of leading questioning are generally undesirable but that there are several exceptions, including for witnesses who are "hostile, unwilling, or biased"). Of course, the Court may change its mind as questioning proceeds at trial, but at this point, the Court is willing to allow plaintiff's counsel to use leading questions on direct examination of these witnesses.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion in Limine re Testimony from Staff Members (Dkt. 145) is **DENIED.**

2. Plaintiff's Motion to Designate Certain Witnesses for Examination Pursuant to Federal Rule of Evidence 611(c) (Dkt. 155) is **GRANTED in part** and **DENIED in part** as explained above.

DATED: December 5, 2013

B. Lynn Winmill
Chief Judge
United States District Court