UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HABIB SADID, an individual,<br><br>                  Plaintiff,<br>      v.<br><br>IDAHO STATE UNIVERSITY, ARTHUR VAILAS, RICHARD JACOBSEN, GRAHAM GARNER, DAVID BEARD, and JOHN/JANE DOES 1 through X, whose true identities are presently unknown,<br><br>                  Defendants. | Case No. 4:11-cv-00103-BLW<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION TO EXCLUDE EXPERTS** |

## INTRODUCTION

Pending before the Court is defendant Graham Garner's Motion to Exclude Expert Opinions. *See* Dkt. 144. The Court has determined that oral argument would not significantly assist the decisional process and will decide the motion without a hearing. For the reasons expressed below, the Court will grant the motion as to Dr. Bowles and Dr. Beaver, but will deny the motion as to Dr. LaCroix.

## BACKGROUND

Plaintiff Dr. Habib Sadid alleges that Mr. Garner defamed him by saying, among other things, that Dr. Sadid had threatened many individuals and that he "presented a lot

of safety issues." *ISU Bengal Article,* Dkt. 88-15, at 2.  At trial, Dr. Sadid intends to present expert opinion testimony regarding his alleged damages from three witnesses: Dr. Tyler Bowles, Dr. Craig Beaver, and Dr. Camille LaCroix.  Dr. Bowles is slated to testify about economic damages.  Dr. Beaver and Dr. LaCroix have issued opinions regard Dr. Sadid's alleged psychological damages.

Mr. Garner says these witnesses should be excluded for several reasons, including that Dr. Sadid intends to ask them to testify about matters beyond the scope of their reports.  More specifically, Mr. Garner contends that these experts issued reports on damages that arose because of Dr. Sadid's termination – not damages that flowed from his later comments about Dr. Sadid's termination.

## ANALYSIS

Federal Rule of Civil Procedure 26(a)(2) deals with disclosure of expert testimony. It requires parties to disclose the identity of expert witnesses that may be used at trial. *See* Fed. R. Civ. P. 26(a)(2)(A).  Additionally, "if the witness is one retained or specially employed to provide expert testimony in the case . . ." the expert disclosure must be accompanied by a written report.  *Id.*  That written report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  This Court's Local Rules further indicate that "[e]xcept for good cause shown, the scope of subsequent testimony by an expert witness must be limited to those subject areas identified in the disclosure report or through other discovery such as a deposition."  D. Idaho Local R. 26.2(b).

With these rules in mind, the Court turns to each expert's report, beginning with Dr. Bowles'.

***Dr. Bowles.***  In describing his report, Dr. Bowles indicated that he had "prepared a report on the economic losses suffered by Dr. Habib Sadid *as a result of being terminated by Idaho State University.*"  Dkt. 149-1, at 9 (emphasis added).  Consistent with this description, Dr. Bowles' report focuses on Dr. Sadid's termination; it does not discuss defamation or address economic losses allegedly flowing from Mr. Garner's comments. *See id.* at 9-33.

Dr. Sadid now attempts to widen the scope of the report.  In responding to this motion in limine, Dr. Sadid submitted an affidavit from Dr. Bowles.  In his affidavit, Dr. Bowles now says that when he formed his opinion about the economic losses Dr. Sadid suffered, he viewed every single "alleged wrong[] and fact[] stated in the Complaint" – including the defamatory comments.  As he puts it:

> In developing my opinion of the economic losses suffered by Dr. Sadid, I viewed and treated as a single, indivisible injury the alleged wrongs and facts stated in the Complaint.  I did so for several reasons, including:
>
> a.  The Complaint explained that the above alleged wrongs were part and parcel of one sequence of events, which explains my short-hand reference in the cover letter to my Report as to "the economic losses suffered by Dr. Habib Sadid as a result of his being terminated by Idaho State University";
>
> b.  There is a deep nexus in subject matter of the termination, the events leading up to that termination, and the alleged defamation as published in the newspaper, i.e., the last occurring to purportedly explain to the public why the first had occurred; and
>
> c.  It is impractical for the economic expert in this case to draw a causal link between the damages suffered by Dr. Sadid and each of the

>individual alleged wrongs and allocate the damages among the separate alleged wrongs accordingly. For that, I defer to judgment of the trier of fact in this case.

*Report,* Dkt. 149-1, at 5 (footnote citation omitted).

There are two problems with allowing Dr. Bowles to testify at trial. First, it would be unfair to defendants to allow Dr. Bowles to expand his opinion at this late date. In preparing for trial, based on the disclosure provided, defendants would logically presume that Dr. Bowles' testimony would relate to damages resulting from Dr. Sadid's termination.

Second, Dr. Sadid intends to use Dr. Bowles' testimony to prove that he suffered specific economic losses as a result of the defamation. The report, however, does not help establish that defamation caused any particular loss. The report could not perform that task, given that it does not even address the allegedly defamatory comments. Instead, Dr. Bowles now says he will simply presume a causal link, and then leave it to the jury to "allocate the damages among the separate alleged wrongs accordingly." *Bowles Aff.*, Dkt. 149-1, ¶ 6(c).

Broadly speaking, the Court agrees with Dr. Sadid that if Mr. Garner's comments were a substantial – but not necessarily the only – factor in bringing about his alleged harms, he may establish causation. The Restatement is in accord with this view, providing that "[d]efamation is a legal cause of special harm to the person defamed if (a) *it is a substantial factor in bringing about the harm*, and (b) there is no rule of law relieving the publisher from liability because of the manner in which the publication has resulted in the harm." Restatement (Second) Torts § 622A (emphasis added). The

parties have not cited Idaho authority addressing the substantial-factor test in the defamation context, but in various negligence contexts, the Idaho Supreme Court has held that the substantial-factor standard is the appropriate test for determining proximate causation. *See Fussell v. St. Clair*, 818 P.2d 295, 302 (Idaho 1991) (discussing cases). This Court predicts that the Idaho courts would adopt the Restatement view in determining whether special damages have arisen from defamatory comments.

But this does not help Dr. Sadid in his attempt to have Dr. Bowles testify. Dr. Bowles only opined as to one alleged cause of economic losses – Dr. Sadid's termination. As noted above, it is not fair to now allow him to revise his opinion to inject a new causal factor into his opinion. If he had intended to render an opinion about losses stemming from the defamation, he could have done so earlier, which would have allowed defense counsel the opportunity to probe these opinions during discovery.

**Dr. Beaver.** Dr. Beaver's report suffers from similar problems. At the beginning of his December 2011 report, Dr. Beaver summarized the "Purpose of [his] Evaluation" with the following narrative description of events that may have caused psychological damage to Dr. Sadid:

> Dr. Sadid was apparently critical of ISU administration. He filed a complaint in Idaho State Court in September 2008 indicating he was being retaliated against for expressing his opinions. Then in May 2009, he was given a Notice of Contemplated Action indicating they were considering dismissing him from ISU for cause. In August 2009, he was placed on administrative leave and restricted from being on campus. He ultimately was terminated from his employment at ISU on October 30, 2009. He is currently involved in both State and Federal Court regarding his termination. *It was requested I conduct a forensic psychological examination of Mr. Sadid to evaluate what, if any, psychological impact or "damage" these events have had upon him.*

MEMORANDUM DECISION AND ORDER - 5

*Dec. 20, 2011 Report*, Dkt. 166-1, at 85 (emphasis added).

As defendant points out, this narrative does not mention Mr. Garner's November 18, 2009 comments. In fact, the report does not specifically mention these comments at any point. In response to this motion, however, Dr. Beaver has submitted an affidavit indicating that he has opinions regarding the impact Garner's comments had upon Dr. Sadid. Specifically, Dr. Beaver now opines that:

> 5. Dr. Sadid was profoundly distraught after the public claims were made that he was a safety threat. He was ashamed and embarrassed to be out in public, even away from the university. Because Dr. Sadid is Iranian and from the Middle East, it was certainly Dr. Sadid's perception that the published statements that he was a security threat and a safety risk and that even worse information about [him] was being kept secret by the university implied that he was a terrorist or was associated with terrorism and were personally and culturally devastating. Dr. Sadid's intense psychological response to these published statements was exactly in line with his perception.
>
> 6. I understand that, prior to his termination, Dr. Sadid disclosed to the press Dr. Vailas' letter of termination of October 9, 2009 stating that Dr. Sadid's employment was to be terminated because Dr. Sadid was a safety risk, security threat, or words to that effect, among other reasons. The psychological harm suffered by Dr. Sadid did not result from Dr. Sadid's disclosure of the letter to the press because Dr. Sadid felt that the Faculty Grievance Committee and the Faculty Senate had vindicated him. My view is that, by this act, Dr. Sadid absolutely was trying to expose the University and Dr. Vailas in making false security threat statements about him and to vindicate his name, honor and professional and community standing.

*Oct. 14, 2013 Beaver Aff.*, Dkt. 149-1, at 37.

These are new opinions, which expand the scope of Dr. Beaver's initial report. Dr. Beaver will not be allowed to testify regarding these new opinions at trial. *See* D.

Idaho Local R. 26.2(b) ("Except for good cause shown, the scope of subsequent testimony by an expert witness must be limited to those subject areas identified in the disclosure report or through other discovery such as a deposition."). Further, because Dr. Beaver's report does not address Mr. Garner's November 18, 2009 comments, Dr. Beaver will not be allowed to testify at trial regarding the opinions stated in his December 2011 report.

**Dr. LaCroix**. Dr. Sadid's third expert, Dr. LaCroix, rendered a broader opinion. She began her opinion by generally stating that she intended to evaluate Dr. Sadid's "current mental health and the psychological impact of actions against him by Idaho State University." *Mar. 27, 2012 Report,* Dkt. 166-1, at 1. Shortly after that, she summarized the "statement of the claim," which includes a brief summary of the events that ultimately led to Dr. Sadid's termination. The final portion of this section reads as follows:

> On 10/29/09 Dr. Vailas issued a letter terminating Dr. Sadid effective 10/30/09 and cited him as a safety risk.
>
> Dr. Sadid's seven claims against the . . . defendants in this case include that their actions deprived him of his Constitutional Rights under the First Amendment, the Fourteenth Amendment (both Due Process and Equal Protection), "Tortious Interference with Contract," "Defamation" of his character and "Intentional Infliction of Emotional Distress."
>
> Dr. Sadid's claimed damages due to the defendants' actions in this case include suffering:
>
> 1. Damages to his livelihood, career and professional reputation.
>
> 2. Severe emotional distress, including lack of sleep, irritability, depression and anxiety, and he has experienced and continues to experience a deep sense of hopelessness for the future as well as a profound sense of loss.

>   2. Fear anger, frustration, irritability and a profound sense of betrayal.
>
>   3. Loss of part of his self-respect and his feeling of self-worth.

*Id.* at 2. Granted, the list of events Dr. LaCroix included in her narrative description of the claim does not reference Garner's comments. But immediately after listing a series of events, Dr. LaCroix refers to the defamation claim and then, later she refers to reputational damages. *Id.; see also id.* at 29 ("He was terminated in 2009 and has filed several lawsuits alleging unlawful termination due to lack of due process, violation of his equal protection and freedom of speech rights, as well as defamation."). As a result, defendants should have been on notice that this expert's opinion would capture mental suffering Dr. Sadid allegedly experienced as a result of Mr. Garner's comments. The motion will therefore be denied as to Dr. LaCroix.

Plaintiff should be aware, however, that in the context of trial, the Court may limit Dr. LaCroix's testimony. One example that comes immediately to mind is Dr. LaCroix's opinions related to Dr. Sadid's chances of getting another job. In that regard, Dr. LaCroix opines that "being terminated as a full tenured professor, and the public release of allegations that he was a safety risk would most definitely affect his reputation and employability." *Id.* at 39. The Court fails to see how Dr. LaCroix's expertise – she is a psychiatrist – extends to opining about Dr. Sadid's job prospects.

## ORDER

**It is ordered that** Defendant's Motion in Limine to Exclude Expert Opinions (Dkt. 144) is **GRANTED** as to Dr. Beaver and Dr. Bowles and **DENIED** as to Dr. LaCroix.

DATED: December 6, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court