UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HABIB SADID, an individual,<br><br>               Plaintiff,<br><br>    v.<br><br>IDAHO STATE UNIVERSITY, ARTHUR VAILAS, RICHARD JACOBSEN, GRAHAM GARNER, DAVID BEARD, and JOHN/JANE DOES 1 through X, whose true identities are presently unknown,<br><br>               Defendants. | Case No. 4:11-cv-00103-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are three motions in limine related to plaintiff's proposed damages evidence.  *See* Dkts. 143, 156, 167.  Additionally, defendant has moved to exclude several witnesses plaintiff intends to call at trial based on alleged Rule 26 violations.  *See* Dkt. 211.

## BACKGROUND

After the summary judgment rulings in this case, plaintiff Dr. Habib Sadid has one remaining claim against one defendant – defamation against Graham Garner.  After ISU terminated Dr. Sadid, Mr. Garner told a reporter at the ISU student newspaper that,

among other things, Dr. Sadid "presented a lot of safety issues." *ISU Bengal Article,* Dkt. 88-15, at 2. Dr. Sadid's defamation suit is based on these comments. At trial, Dr. Sadid's intends to present the following testimony:

(1)    Dr. Sadid plans to testify that he has been unsuccessful in finding work after Garner's comments;

(2)    Dr. Sadid plans to have some of his former co-workers – including professors who have served on faculty recruitment committees for ISU – testify about ISU's vetting procedures for faculty candidates;

(3)    Dr. Sadid plans to have other ISU professors testify that he will not able to find a job because of Garner's comments; and

(4)    Dr. Sadid will call witnesses to testify that Garner's comments caused him to suffer physically and emotionally.[1]

Mr. Garner contend that the Court should exclude all this evidence. Additionally, as noted, Mr. Garner contends that several of plaintiff's witnesses were not disclosed during pretrial discovery and should therefore be excluded at trial.

## ANALYSIS

**1.    Defendants' Motion to Exclude Witnesses Not Disclosed During Pretrial Discovery (Dkt. 211).**

The Court will first address the alleged Rule 26 violations. Defendants contend that Dr. Sadid failed to disclose the majority of his listed trial witnesses during pretrial

---

[1] The parties' various motions in limine address numerous points. This summary is not exhaustive.

discovery.  *See Objections to Plaintiff's Witness List,* Dkt. 178-1 (objecting to 15 of the plaintiff's 21 listed witnesses).  The Court has already ruled that three witnesses defendants have objected to (Dr. Beaver, Dr. Bowles, and Mr. Zang) will not be permitted to testify at trial.  This decision will address the remaining disputed witnesses.[2]

Of these remaining witnesses, it is unclear whether plaintiff listed them in his initial Rule 26 disclosures.  However, in March 2012, plaintiff identified some of the disputed witnesses in interrogatory responses (identifying Marco Schoen, Brian Williams, David Delehanty, and Mary Hofle).  A couple of months after this interrogatory response was served, the following disputed witnesses were deposed: Ronda Mahl; Priscilla Goldbeck; Ann Marie Averitt; Marco Schoen; Brian Williams; and Mary Hofle.  Additionally, three of the disputed witnesses – David Delehanty, Mikle Ellis, and Richard Wabrek – have provided affidavits (all in 2011) for Dr. Sadid. Typically, Dr. Sadid's trial witness list indicates that, if a witness was deposed or provided an affidavit, the witness will testify "in accordance with" his or her deposition or affidavit testimony.  *See* Dkt. 169.

As defendants correctly point out, Rule 26(e)(1)(A) requires a party to supplement a discovery response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). However, a party need not supplement a response "if the additional or corrective

---

[2] Defendant's motion to exclude witnesses based on Rule 26 violations does not match up exactly with his earlier-filed objections to plaintiff's witnesses.  The Court will rely on the objections.  *See* Dkt. 178-1.

information has . . . . otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c) provides that if a party fails to provide information as required by Rule 26(a) or (e), the party will not be allowed to use that information at trial unless the failure is "substantially justified or harmless."  Whether a Rule Rule 26(a) violation is "justified" or "harmless" is entrusted to the court's discretion based on such factors as: (1) the importance of the evidence; (2) whether the party against whom it is offered is prejudiced or surprised; (3) that party's ability to discover the evidence; (4) whether the nondisclosure was wilful or inadvertent; and (5) whether exclusion of the evidence would disrupt the trial.

Based on these factors, the Court has determined that even assuming a Rule 26 violation, plaintiff will be permitted to call the disputed witnesses at trial *if* those witnesses were deposed or provided an affidavit.  According to the Court's review of plaintiff's witness list, the only excluded witness under the Court's determination would be Jesse Stoler and Linda Kearns.  However, if these witnesses were included in Dr. Sadid's Rule 26 disclosures, they also will be permitted to testify.

**2.     Defendant's Motion to Exclude Evidence Related to Lost Job Opportunities (Dkt. 167)**

Turning first to Dr. Sadid's lost employment opportunity theory, it appears that he intends to testify about various different jobs he applied for in the wake of Mr. Garner's comments about his termination from ISU.  Dr. Sadid says that his inability to find a job proves that Mr. Garner's comments caused various prospective employers and customers

not to hire him.  *Response,* Dkt. 183.  Mr. Garner contends that the Court should not allow any of this evidence because Dr. Sadid has not put forth any evidence that would allow a jury to infer a causal link between his comments and Dr. Sadid's failure to find work.

Preliminarily, in the defamation context, damages related to a failed job search are special damages.  Unlike general damages – which include, for example, loss of reputation, humiliation, embarrassment, and mental anguish – special damages involve the loss of something having a concrete pecuniary value.  *See generally* Rodney A. Smolla, *Law of Defamation,* § 9.35.  "Special damages must be specific, actual, and nonspeculative."  50 *Am. Jur. Libel & Slander* § 358 (citing cases).  Lost employment opportunities involve a concrete financial loss and are therefore a special harm. *See, e.g., Smolla* § 9.35; *Restatement (Second) Torts,* § 575, cmt. (b) (employment that the plaintiff would have obtained but for the currency of the slander is special harm).  Plaintiffs seeking special damages must prove causation.  *See generally Doe v. Chao*, 540 U.S. 614, 621 (2004) (proof of causation generally required to sustain an award of special damages).

Courts have viewed with a jaundiced eye a plaintiff's claim for compensation based on lost job opportunities when the claim is based solely on their own testimony about their failed job search.  In *Jones v. Western & Southern Life Ins. Co.*, 91 F.3d 1032 (7th Cir. 1996), for example, the Seventh Circuit upheld the district court's refusal to submit an item of special damages to the jury.  The court explained that "[w]ith nothing but [the plaintiff's] own testimony, both with respect to the existence of the job

opportunity itself and with respect to the amount of money it was worth, the district court correctly refused to submit this item of damages to the jury." *Id.* at 1036 (applying Illinois law). Earlier, the *Jones* Court explained that plaintiff was "under the misapprehension that he did not need to prove that the job either existed or was worth a particular amount of money in order for this question to be submitted to the jury." *Id.* at 1036.

An Oregon appellate court ruled similarly in *Benassi v. Georgia-Pacific*, 662 P.2d 760 (Or. Ct. App. 1983). In that case, the plaintiff alleged that as a result of his employer's slanderous remarks regarding his discharge, he was prevented from securing other employment and ultimately was forced to accept a position at a lower rate of pay. The court held there was insufficient proof of special damages because the plaintiff failed to show that he "would have obtained [employment] but for the currency of the slander." *Id.* at 765. Because the plaintiff did not claim that any potential employers were aware of the defamatory statements, the court concluded that "it would be mere speculation to permit the jury to infer that the plaintiff was unable to obtain a new job ... because of the defamation." *Id.* at 767. *See also Tosti v. Ayik*, 476 N.E. 2d 928 (Mass. 1985) (discussing *Benassi,* 662 P.2d 532 among other cases; observing that in the case before it, "the record shows no comparable proof that the plaintiff's failure to obtain full-time employment from 1971 through 1982 was due to defendant's tortious acts"); *cf. Jaramillo v. Food 4 Less Madera*, No. CV-F-10-1238, 2010 WL 4746170 (E.D. Cal. 2010) (The court dismissed a defamation claim, observing that "[t]he FAC merely alleges that [plaintiff] . . . lost his job with Gong and opportunities for subsequent employment. The

FAC fails to allege the nature and extent [of] Mr. Jaramillo's claimed loss with specifics.").

Here, Dr. Sadid claims that potential employers were undoubtedly aware of Mr. Garner's comments, but the only proof he offers on this point tends to be sweeping statements such as this one:  "In 2010 . . . Defendant Garner's defamatory statements to the press went viral in cyperspace around the world . . . ."  *Response,* Dkt. 183, at 3; *see also id.* at 5 ("there are statements in the press and circulated around the world by the Internet that Dr. Sadid is a security threat . . . .")  The fact that an article is available on the internet, however, does not necessarily mean employers would search for and find it. Additionally, even assuming potential employers or customers did find the article containing Garner's comments, the jury would have to further assume that these comments were, in fact, the reason Dr. Sadid was not hired.  Then, Dr. Sadid would ask the jury to peg a specific dollar amount on the value of these lost job opportunities, based on his assessment of what the job opportunities were worth.  *Cf. Jones* (in pointing out plaintiff's failure to prove specifics regarding his lost employment opportunity theory, the court asked "How do we know . . . [the potential employer] was going to pay Jones only $125,000?  Why not $150,000, or $500,000?").

Under these circumstances, the Court is not inclined to allow Dr. Sadid to pursue special damages based on alleged lost job opportunities.  Simply put, he has not submitted evidence that is specific, actual, and nonspeculative.  Therefore, he will be limited to recovering general damages.  *See generally Barlow v. Int'l Harvester Co.,* 522 P.2d 1102, 1118 (Idaho 1974) ("'There is no exact measure of general damages which

can be applied in either a libel or slander action. It is within the special province of the jury to determine the amount.'") (citation omitted).  Given that Dr. Sadid will be limited to a general damages theory, the Court does not believe Dr. Sadid's testimony regarding his failed job search is relevant, as this evidence would appear to be linked only to Dr. Sadid's special damages request.  Plaintiff should be aware, however, that if he wishes to point the Court to more specific evidence that might further support his special damages theory, the Court is open to reconsidering this decision.  As with all the Court's decision on motions in limine, this decision is subject to change during trial.[3]

### 3.     Defendant's Motion to Preclude Lay Witnesses from Testifying About Plaintiff's Alleged Damages (Dkt. 143)

Mr. Garner has also moved to prevent Dr. Sadid's lay witnesses from testifying about three specific subjects:  (1) Dr. Sadid's emotional and physical condition; (2) Dr. Sadid's character; and (3) Dr. Sadid's job prospects.[4]

#### A.     Job Prospects

Turning first to Dr. Sadid's job prospects, for the reasons explained above, the Court will not allow Dr. Sadid's lay witnesses to opine that Mr. Garner's comments destroyed Dr. Sadid's chances of getting another job.

---

[3] If the Court reconsiders its ruling at any point, it will then take up defendant's assertion that Dr. Sadid failed to disclose some details of his job search during pretrial discovery.

[4] Defendant's motion is wide-ranging and often non-specific in terms of discussing potential problems with testimony from Dr. Sadid's lay witnesses.  For example, the defendant generally asserted that "the conclusions drawn by Mr. Delehanty in his affidavit (Dkt. 23-2 at 108-114) are lacking evidentiary foundation."  *Motion Mem.*, Dkt. 143-1, at 2.  The Court has not addressed these non-specific objections.

**B.     Dr. Sadid's Emotional and Physical Condition**

Regarding Dr. Sadid's emotional and physical condition, Mr. Garner contends that Dr. Sadid's lay witnesses should not be able to offer any testimony on this subject.  Dr. Sadid, on the other hand, says these witnesses should be permitted to testify as to (1) their personal observations of Dr. Sadid's mental and physical symptoms and (2) the cause of those symptoms.  *See Response*, Dkt. 151, at 8.

Under Federal Rule of Evidence 701, a lay witness may offer opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

As applied here, the Court will not allow Dr. Sadid's lay witnesses to opine that Mr. Garner's comments caused Dr. Sadid's physical and mental health to deteriorate.  *Cf. United States v. Cravens*, 275 F.3d 637, 641 (7th Cir. 2001) ("Although a lay person may readily observe a drug or alcohol problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision.").  Nor will these witnesses be permitted to offer any medical diagnoses. *See id.*

This ruling will not, however, will not prevent Dr. Sadid's witnesses from testifying as to their personal observations of Dr. Sadid's emotional and physical condition before and after Garner's comments.  Allowing this testimony does not implicate Rule 701, as it would be purely factual.

## C.      Dr. Sadid's Character

Finally, Garner seeks to prevent Dr. Sadid's witnesses from generally opining that Dr. Sadid is a peaceable person who does not present a safety threat to co-workers or students.  This testimony is apparently anticipated from three ISU professors – Mr. Wabrek, Dr. Ellis, and Mr. Delehanty.  Earlier in this lawsuit, these professors filed affidavits supporting Dr. Sadid.  Their affidavits included the following sorts of statements:

- "I do not consider Dr. Sadid to be a safety threat to the Idaho State University, campus, faculty, staff, students or administrators.  I believe this claim to be absurd because I have never seen Dr. Sadid threaten anyone and I have never felt threatened by him." *Feb. 15, 2011 Ellis Aff.,* Dkt. 90, ¶ 30.

- "Dr. Sadid is not a threat to faculty, staff, students, women, administrators, or anyone else.  Dr. Sadid does not believe in firearms or violence and he has stated this to me on several occasions." *Feb. 11, 2011 Delehanty Aff.*, Dkt. 23-2, ¶ 25.

- "I do not consider Dr. Sadid to be a safety threat to the Idaho State University campus, faculty, staff, students, administration, or anyone else. He is a very passionate and excitable individual. Violence is not in his character. He does not have the heart for that sort of thing.  His passion and excitement may have been mistaken for threatening actions. *Feb. 10, 2011 Wabrek Aff.*, Dkt. 89, ¶ 22.

The Court intends to allow these witnesses to testify as follows:  First, they could testify regarding their personal interactions with Dr. Sadid and their observations of Dr. Sadid interacting with others.  They would be able to testify as to Dr. Sadid's demeanor during these interactions.

The Court also anticipates allowing these witnesses to testify as to their broader opinions as to Dr. Sadid's general personality traits, including whether these witnesses believe Dr. Sadid poses a "safety threat." *See generally* Fed. R. Evid. 405(a) ("When evidence of a person's character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion."). Nonetheless, the Court will reserve judgment on this question until trial. Accordingly, the Court will deny Mr. Garner's motion without prejudice. Mr. Garner's counsel may raise this objection during trial.

**3. Plaintiff's Motion to Admit Lay Opinion Testimony from Marco Schoen, Mary Hofle and Similarly Situated Lay Witnesses (Dkt. 156)**

Dr. Sadid  has filed a motion in limine seeking to admit lay opinion testimony of various witnesses, specifically naming Marco Schoen and Mary Hofle, "as to Plaintiff's damages and habits; routine practices within university faculties, particularly at . . . ISU . . . and other related matters." Dkt. 156, at 1.

Dr. Sadid's description of testimony he expected from Dr. Schoen and Ms. Hofle, as well "similarly situated other skilled lay observer witnesses," tends to be non-specific. As a result, the Court will reserve ruling on specific objections until trial. At this point, Court can offer the following general guidelines:

*Communication habits*. The Court anticipates allowing witnesses to testify regarding Dr. Sadid's "communication habits." Dr. Sadid's theory seems to be that faculty members raise their voices all the time and the fact that he also did would not support a conclusion that he threatened anyone. The Court anticipates allowing this

testimony to the extent witnesses are testifying about their own observations of Dr. Sadid or observations of ISU faculty members' in general.

*Tenure & Termination.*  Dr. Sadid says Dr. Hofle should be permitted to testify about "routine practices of the University regarding tenure and termination of engineering professors and its Faculty Handbook." *Mot. Mem.,* Dkt. 156-1, at 4.  The Court fails to see the relevance of this testimony.

*Causation and Damages.*  The Court does not anticipate allowing Dr. Sadid's lay witnesses to testify that Mr. Garner's comments caused damage to Dr. Sadid, either in terms of his job prospects or in terms of alleged mental or physical suffering.  As noted above, however, Dr. Sadid's lay witnesses may testify as to their personal observations regarding Dr. Sadid's emotional and physical condition, both before and after Mr. Garner's comments.

*Testimony Regarding Experiences on Faculty Search Committees.*  At this juncture, it appears that Dr. Sadid will be unable to pursue a special damages theory. Therefore, testimony by a witness as to their personal experiences in how a committee evaluates potential candidates for academic appointment would seem to be irrelevant.

## ORDER

**IT IS ORDERED that:**

1.  Defendant's Motion in Limine to Exclude Lay Witnesses (Dkt. 211) is

    **GRANTED in part** and **DENIED in part** as explained above.

2.  Defendant's Motion to Exclude Evidence Related to Lost Job Opportunities

    (Dkt. 167) is **GRANTED.**

3.   Defendant's Motion to Preclude Lay Witnesses from Testifying About Plaintiff's Alleged Damages (Dkt. 143) is **GRANTED in part** and **DENIED in part** as explained above.

4.   Plaintiff's Motion to Admit Lay Opinion Testimony (Dkt. 156) is **DENIED WITHOUT PREJUDICE,** given that the Court has decided to reserve ruling on these issues until trial.

DATED: December 10, 2013

B. Lynn Winmill
Chief Judge
United States District Court